UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REVAH ANZALDUA | : | |
| | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | NO. 2:15-cv-00732 |
| v. | : | |
| | : | |
| WHYY, INC. | : | |
| Defendants | : | |
| | : | |
| | : | |

**DEFENDANT, WHYY, INC.'S ANSWER TO PLAINTIFF'S
FIRST AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES**

Defendant, WHYY, Inc., by and through its undersigned attorney, hereby answers Revah Anzaldua's First Amended Complaint, and asserts Affirmative Defenses to First Amended Complaint. In support thereof, WHYY avers:

**INTRODUCTION**

1. It is admitted that Ms. Anzaldua purports to have initiated this action to redress alleged violations of the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act (":00 PMWA"), the Family and Medical Leave Act ("FMLA") and to redress alleged acts of retaliation for Ms. Anzaldua's exercise of her FMLA rights. It is denied that any of Ms. Anzaldua's statutory rights were violated as alleged and it is further denied that Ms. Anzaldua is entitled to recover any damages for these alleged statutory violations.

**PARTIES**

2. Admitted.

3. Admitted.

**JURISDICTION AND VENUE**

4. Admitted.

1

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

## GENERAL FACTUAL ALLEGATIONS

11. The preceding paragraphs of this pleading are incorporated by reference as if they were fully set forth here.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted. By way of further answer, this change in title and expansion of role provided greater opportunities for Ms. Anzaldua to earn commissions if she performed her job successfully.

16. Admitted in part, denied in part. Her job title was changed to Manager, Corporate Sponsorships. The remaining averments in this paragraph are admitted.

## FACTS PURPORTEDLY RELEVANT TO PLAINTIFF'S FLSA/PMWA CLAIMS

17. The preceding paragraphs of this pleading are incorporated by reference as if they were fully set forth here.

18. Admitted.

19. It is denied that Ms. Anzaldua was an employee entitled to the protections of the FLSA, because she was exempt from the FLSA's overtime requirements.

20. Denied as stated. The scope of her position titled Manager, Corporate Sponsorships was to develop and maintain relationships with executive management of corporations to obtain funding for WHYY and to grow company revenues through the rentals of WHYY's venue and teleproduction services. The major duties and responsibilities Ms. Anzaldua was to carry out in her job as Manager, Corporate Sponsorships were:

- Secure leading corporate sponsorship for annual President's Dinner including renewals and acquisition of new corporate sponsors.

- Secure major corporate table sponsorship and individual donors for annual President's Dinner, including renewals and acquisition of new corporate sponsors.

- Oversee the management of Corporate Challengers for On-Air support during three annual membership drive on TV12 and 91FM, including cultivation, solicitation, acknowledgement recognition and stewardship.

- Develop and manage revenue and expense budgets for corporate sponsorship programs. Monitor and analyze results; provide data to management.

- Work with Underwriting, Major Gifts, Capital campaign and program content departments to identify new and/or additional sponsorship opportunities.

- Manage relationships with corporations as they are solicited for special events or special projects support.

- Administration of all MMS inquiries including sales calls, advising potential clients of availability and fulfilling client information.

- Prepare quotations and pitches for potential clients and encouraging clients to visit the venue and setting sales appointments.

- Conducting sales visits with potential clients.

- Following up sales visits and pitches in order to convert potential clients to confirmed and contracted status.

- Managing events from initial ideas through to staging of events including preparation of contracts, invoices and onsite event presence.

- Liaising with in-house suppliers to provide all information for the event.

- Providing client contact and ensuring all arrangements are met and contracted obligations are fulfilled.

- Available for flexible hours.

- Maintain a regular and predictable attendance.

- Prepare monthly reports and quarterly plans.

21. Denied as stated. It was Ms. Anzaldua's responsibility to develop a relationship of service, value and trust so that underwriters, donors and contributors would make greater and more consistent investments in WHYY.

22. Denied as stated. While guidelines were established, WHYY permitted Ms. Anzaldua considerable leeway in developing relationship with s underwriters, donors and contributors, and when necessary, she had discretion to deviate from the guidelines with respect to both product and price, subject review and approval.

23. Denied as stated. While guidelines were established, WHYY permitted Ms. Anzaldua considerable leeway in developing relationships underwriters, donors and contributors, and when necessary, she had discretion to deviate from the guidelines with respect to both product and price, subject review and approval.

24. Admitted in part, denied in part. When Ms. Anzaldua failed to properly exercise the discretion WHYY permitted her, then her poor decisions were corrected.

25. Admitted in part, denied in part. It is admitted that Ms. Anzaldua performed the tasks listed in this paragraph related to the WHYY President's Dinner. It is admitted further that WHYY set guidelines for pricing and opportunities. It is denied that Ms. Anzaldua was prohibited from exercising her discretion, within limits, about pricing and opportunities.

26. Admitted in part, denied in part. It is admitted that Ms. Anzaldua did not work a strictly 9 to 5 schedule and it is further admitted that barring responsibilities that required

4

different hours, she was expected to be at work during the hours between 9:00 am and 5:00 pm. By way of further response, WHYY's administrative staff is expected to work during regular business hours to be available for each other, and to be available for underwriters, donors and contributors. It is denied that Ms. Anzaldua worked the hours she claims to have worked.

27. Denied. On very rare occasions, Ms. Anzaldua would be called upon to arrive early for vendors and caterers, but the need for this was extremely limited.

28. It is admitted that WHYY held a planning meeting at 9:00 am once a week, and that Ms. Anzaldua was required to attend that planning meeting.

29. It is denied that Ms. Anzaldua had a "scheduled shift" as an exempt salaries employee she was required to work as necessary to complete the tasks she bore responsibility for completing.

30. Admitted.

31. It is denied that Ms. Anzaldua had a "scheduled shift." It is admitted that if she did not complete her work duties by :00 pm, then she would need to remain at work after 5 :00 pm to complete them.

32. Denied.

33. It is admitted that Ms. Anzaldua would, on occasion, arrive at work before 9:00 am and stay after 5:00 pm and that Ms. Oleyn observed her doing so. It is denied that the work was "compensable" because as an exempt employee, WHYY paid her to do the work when it paid her salary and commissions.

34. Denied.

35. Denied.

36. It is admitted that Ms. Anzaldua may, on occasion, have worked in excess of 40

hours in a given week, and it is admitted that she was paid only her salary and commission and no overtime during those weeks. It is denied that WHYY paid her an hourly wage or, as implied, that it owed her anything for any hours she worked beyond 40 hours.

37. Admitted.

38. Denied.

39. It is admitted that WHYY did not authorize Ms. Anzaldua to hire and fire other employees. It is denied that the absence of authority to hire and fire made Ms. Anzaldua a non-exempt employee.

40. Denied. WHYY compensated Ms. Anzaldua with a salary of not less than $455 per week plus commissions; her primary duties involved the performance of office or non-manual work directly related to the management or general business operations of WHYY and its customers; and her primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

41. Denied.

42. Denied as stated. It is admitted that her supervisors at WHYY supervised and reviewed Ms. Anzaldua's exercise of discretion and had the authority to review and change arrangements she made. Nonetheless, WHYY gave had the authority to exercise discretion at the outset, and when she did so appropriately, the arrangements she made were reviewed, approved and permitted without change.

43. Denied.

44. Denied as a conclusion of law.

45. Denied.

46. It is admitted that WHYY did not pay Ms. Anzaldua 1.5 times her regular pay for

hours beyond 40 she worked in a week, if any, and it is further denied that WHYY had any obligation to compensate her for such hours because it paid her a salary plus commission in her capacity as an exempt administrative employee.

47. Denied.

**FACTS PURPORTEDLY RELEVANT TO PLAINTIFF'S FMLA CLAIMS**

48. The preceding paragraphs of this pleading are incorporated by reference as if they were fully set forth here.

49. Denied.

50. It is admitted that Ms. Anzaldua was treating with a psychiatrist for depression and anxiety. It is further admitted that WHYY approved her time off of work under the FMLA related to the claimed and documented mental health conditions.

51. Admitted.

52. After reasonable investigation, WHYY lacks knowledge or information sufficient to form a belief about the truth of the allegations stated in this paragraph of the First Amended Complaint. Pursuant to Rule 8(b)(5), the allegations in this paragraph are therefore denied. By way of further response, Ms. Anzaldua had only two options for addressing her need for time off that she claimed was necessary to address her mental health concerns: either she could use her paid time off, or she could seek FMLA leave, if she qualified.

53. Admitted.

54. Admitted.

55. Admitted.

56. Admitted.

57. After reasonable investigation, WHYY lacks knowledge or information sufficient

to form a belief about the truth of the allegations stated in this paragraph of the First Amended Complaint.  Pursuant to Rule 8(b)(5), the allegations in this paragraph are therefore denied.

58.    After reasonable investigation, WHYY lacks knowledge or information sufficient to form a belief about the truth of the allegations stated in this paragraph of the First Amended Complaint.  Pursuant to Rule 8(b)(5), the allegations in this paragraph are therefore denied.

59.    After reasonable investigation, WHYY lacks knowledge or information sufficient to form a belief about the truth of the allegations stated in this paragraph of the First Amended Complaint.  Pursuant to Rule 8(b)(5), the allegations in this paragraph are therefore denied.

60.    Admitted.

61.    Admitted.

62.    It is admitted that Mr. Rosenthal was assigned to work with Ms. Anzaldua's underwriters, donors and contributors while Ms. Anzaldua was absent on FMLA leave.  With respect to the remaining averments in this paragraph, after reasonable investigation, WHYY lacks knowledge or information sufficient to form a belief about the truth of the allegations stated in this paragraph of the First Amended Complaint.  Pursuant to Rule 8(b)(5), the remaining allegations in this paragraph are therefore denied.

63.    Denied as stated.  The letter approved leave until September 1, 2014, and Ms. Anzaldua was instructed to bring documentation of her fitness to return to work when she returned on September 2, 2014.

64.    Admitted.

65.    After reasonable investigation, WHYY lacks knowledge or information sufficient to form a belief about the truth of the allegations stated in this paragraph of the First Amended Complaint.  Pursuant to Rule 8(b)(5), the allegations in this paragraph are therefore denied.

66. After reasonable investigation, WHYY lacks knowledge or information sufficient to form a belief about the truth of the allegations stated in this paragraph of the First Amended Complaint. Pursuant to Rule 8(b)(5), the allegations in this paragraph are therefore denied.

67. After reasonable investigation, WHYY lacks knowledge or information sufficient to form a belief about the truth of the allegations stated in this paragraph of the First Amended Complaint. Pursuant to Rule 8(b)(5), the allegations in this paragraph are therefore denied.

68. Denied as stated. Ms. Anzaldua did not, as required, provide a note from her doctor to this effect, in order to properly document an extension of her leave until a specialist consultation could be arranged.

69. It is admitted that, without documenting the need for the leave she was requesting with note of a medical practitioner, Ms. Anzaldua requested to extend her leave to some indeterminate time in the future.

70. Admitted.

71. Denied. By way of further response, Ms. Anzaldua worked ___ weeks during 2014 when she was not using her paid time off, or out of work on FMLA leave, and her lack of production and failure to perform in accordance with expectations led directly WHYY's need to discharge. Ms. Anzaldua's documented mental health issues, and consequent need for leave did not excuse her abject failure to perform when she was able to show up and work.

72. Denied as stated. It is admitted that Ms. Anzaldua's treating physician and psychotherapist documented her mental health conditions, but it is denied that she was entitled to any leave other than the leave that was documented and which ended on September 1, 2014.

73. Denied.

74. Denied.

75. After reasonable investigation, WHYY lacks knowledge or information sufficient to form a belief about the truth of the allegations stated in this paragraph of the First Amended Complaint. Pursuant to Rule 8(b)(5), the allegations in this paragraph are therefore denied.

76. Denied.

**FACTS PURPORTEDLY RELEVANT TO PLAINTIFF'S ADEA CLAIMS**

77. The preceding paragraphs of this pleading are incorporated by reference as if they were fully set forth here.

78. Admitted.

79. Admitted.

80. Denied.

81. Denied.

82. Denied.

83. It is admitted that Ms. Anzaldua was dissatisfied with WHYY's decision to assign her to the position of Underwriting Representative. It is admitted that WHYY did nothing to address this concern of Ms. Anzaldua.

84. Admitted. WHYY needed to assign Mr. Rosenthal some of Ms. Anzaldua's former sales responsibilities precisely because Ms. Anzaldua was failing to properly perform those responsibilities.

85. It is admitted that Ms. Anzaldua failed to reach her sales goals, and it is admitted that she received written negative feedback for her having failed to meet expectations after WHYY placed her on a performance improvement plan. By way of further response, Mr. Rosenthal was required to, and did in fact, write a plan for how he was going to bring his sales performance, as a result of, and in response to, his failure to meet his goals.

86. Admitted.

87. Admitted.

88. Admitted.

89. Denied.

90. Denied.

91. Denied.

92. Admitted.

93. Denied.

94. Denied.

95. Denied.

## COUNT I
## FAIR LABOR STANDARDS ACT
## ALLEGED FAILURE TO PAY OVERTIME COMPENSATION CLAIM

96. The preceding paragraphs of this pleading are incorporated by reference as if they were fully set forth here.

97. Denied as stated. Salaried employees who qualify for the exemption from the FLSA's hourly pay requirement, like Ms. Anzaldua, need not be paid by the hour for every hour worked.

98. Denied as stated. Salaried employees who qualify for the exemption from the FLSA's hourly pay requirement, like Ms. Anzaldua, need not be paid time and a half for every hour over 40 hours worked in a work week.

99. Denied. WHYY treated Ms. Anzaldua properly as a salaried administrative employee, who was exempt from the FLSA's overtime requirements.

100. Denied.

11

101. Denied.

102. Denied.

WHEREFORE, WHYY respectfully requests that this court enter judgment in its favor and against Ms. Anzaldua on Count I of her First Amended Complaint, assessing her for WHYY's attorneys' fees and costs incurred in the defense of this matter because the claim is willfully false, and without factual or legal foundation.

## COUNT II
## PENNSYLVANIA MINIMUM WAGE ACT OF 1968
## ALLEGED FAILURE TO PAY OVERTIME COMPENSATION CLAIM

103. The preceding paragraphs of this pleading are incorporated by reference as if they were fully set forth here.

104. Admitted.

105. Admitted.

106. Denied.

107. Denied.

WHEREFORE, WHYY respectfully requests that this court enter judgment in its favor and against Ms. Anzaldua on Count II of her First Amended Complaint, assessing her for WHYY's attorneys' fees and costs incurred in the defense of this matter because the claim is willfully false, and without factual or legal foundation.

## COUNT III
## FAMILY AND MEDICAL LEAVE ACT
## ALLEGED INTERFERENCE AND RETALIATION CLAIM

108. The preceding paragraphs of this pleading are incorporated by reference as if they were fully set forth here.

109. Admitted.

110. Admitted.

111. Denied.

112. It is admitted that the alleged conduct would constitute both interference and retaliation if the conduct took place; however, it is denied that the conduct took place.

113. It is denied that WHYY wrongfully terminated Ms. Anzaldua's employment. As to the remaining factual allegations in this paragraph, after reasonable investigation, WHYY lacks knowledge or information sufficient to form a belief about their truth. Pursuant to Rule 8(b)(5), the remaining factual allegations in this paragraph are therefore denied.

WHEREFORE, WHYY respectfully requests that this court enter judgment in its favor and against Ms. Anzaldua on Count III of her First Amended Complaint, assessing her for WHYY's attorneys' fees and costs incurred in the defense of this matter because the claim is willfully false, and without factual or legal foundation.

## COUNT IV
## AGE DISCRIMINATION IN EMPLOYMENT ACT
## ALLEGED DISCRIMINATION AND RETALIATION CLAIM

114. The preceding paragraphs of this pleading are incorporated by reference as if they were fully set forth here.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

WHEREFORE, WHYY respectfully requests that this court enter judgment in its favor and against Ms. Anzaldua on Count IV of her First Amended Complaint, assessing her for

WHYY's attorneys' fees and costs incurred in the defense of this matter because the claim is willfully false, and without factual or legal foundation.

## **AFFIRMATIVE DEFENSES**

1. The claims are barred by accord and satisfaction.

2. The claims are barred by arbitration and award.

3. The claims are barred by contributory negligence.

4. The claims are barred by duress.

5. The claims are barred by estoppel.

6. The claims are barred by failure of consideration.

7. The claims are barred by fraud.

8. The claims are barred by illegality.

9. The claims are barred by laches.

10. The claims are barred by payment.

11. The claims are barred by release.

12. The claims are barred by res judicata and collateral estoppel.

13. The claims are barred by the statute of frauds.

14. The claims are barred by the statute of limitations.

15. The claims are barred by waiver.

16. Plaintiff has failed to mitigate her damages.

17. Plaintiff's damages, if any, were caused by her own conduct.

18. At all times relevant, the plaintiff was an at-will employee.

19. Defendant did not terminate Plaintiff 's employment for any prohibited reason such as age or engaging in protected activities.

20. Defendant affirmatively states that Plaintiff's age and/or engaging in protected activities was not a relevant factor in any employment decision Defendant made regarding Plaintiff.

21. To the extent Plaintiff's claims are based in whole or in part upon a "mixed motive" claim and the finder of fact determines, based upon legally sufficient evidence, that age, or engaging in protected activities was a motivating factor in any employment decision at issue (which Defendant absolutely denies), Defendant is entitled to judgment, in whole or in part, because the same employment decisions would have been made irrespective of whether age or engaging in protected activity was considered.

22. Defendant's actions toward Plaintiff were privileged under Pennsylvania common law.

23. Plaintiff's claims are barred and/or reduced under the Pennsylvania Comparative Negligence Act.

24. Plaintiff's Complaint fails to state a valid cause of action as a matter of law.

25. Plaintiff was an exempt employee under the FLSA's administrative exemption.

26. Plaintiff was an exempt employee under the FLSA's outside sales exemption.

27. Defendant is entitled to attorneys' fees and other costs associated with the defense of this action on grounds that this action is frivolous, unreasonable and groundless.

28. Plaintiff's request for jury trial is barred for some or all of Plaintiff's claims.

29. Plaintiff's Complaint is barred by Plaintiff's unclean hands, discriminatory conduct and false claims.

30. Defendant's employment actions against Plaintiff were taken for legitimate, non-discriminatory, non-pretextual business reasons.

31. Defendant acted in good faith with regard to Plaintiff, her employment and the termination of her employment and, therefore, is not liable for injunctive, declaratory, compensatory or punitive damages or prejudgment interest, attorney fees, expert witness fees, costs or expenses whatsoever.

32. Defendant reserves the right to assert any additional separate or affirmative defenses that are made known during discovery.

WHEREFORE, Defendant denies that it is in any way liable in this matter and demand that Plaintiff's Complaint be dismissed with prejudice and that judgment be entered in favor of Defendant and for such other further relief as the Court deems just and proper.

                                            LITCHFIELD CAVO LLP

By: _____
    Joel I. Fishbein, Esquire
    Identification No.: 57550
    1515 Market Street
    Suite 1220
    Philadelphia, PA 19102
    215-999-5771
    Attorneys for Defendants

Date: March 7, 2016

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REVAH ANZALDUA                  :
                                :   CIVIL ACTION
           Plaintiff             :
                                :   NO. 2:15-cv-00732
     v.                         :
                                :
WHYY, INC.                      :
                                :
           Defendants            :
                                :
                                :

## CERTIFICATE OF SERVICE

I, Joel I. Fishbein, Esquire, do hereby certify that I have served a true and correct copy of the foregoing Answer and Affirmative Defenses upon all counsel of record simultaneously with the filing of the pleading via the Court's Electronic Filing System on March 7, 2016 on the following counsel of record:

Michael Murphy, Esquire
Michael Groh, Esquire
Murphy Law Group, LLC
One Penn Center, Suite 1230
Philadelphia, PA 19103

**LITCHFIELD CAVO LLP**

By:_____
Joel I. Fishbein, Esquire
Identification No.: 57550
1515 Market Street
Suite 1220
Philadelphia, PA   19102
215-999-5771
Attorneys for Defendants